(107 So. 108)

No. 25715.

YOUNG (McMICHAEL, Assignee) v. FIRE-
MAN'S FUND INS. CO.

(Nov. 30, 1925. Rehearing Denied Feb.
1, 1926.)

*(Syllabus by Editorial Staff.)*

1. Insurance ⊕499—Value of property cov-
ered by fire policy determined as of date of
loss.

The value of property covered by a fire
policy is to be determined as of the date of the
loss.

2. Evidence ⊕113(5)—Proper to take prices
of clean rice to fix value of plaintiff's rice in
its rough state at time of fire, under fire in-
surance policy.

It was proper to take prices of clean rice as
basis for fixing value of plaintiff's rice in its
rough state at time of fire, under fire insur-
ance policy, where it was shown that clean rice
did have a market value, and when plaintiff's
rice was destroyed, rough rice, on basis of price
of clean rice, was worth $5 per barrel.

3. Insurance ⊕665(4)—Evidence held to show
value of rice insured under fire policy.

In suit for difference between value of rice
insured under fire policy when it was destroyed,
and amount paid to mortgagee for plaintiff's
account, evidence *held* to show that plaintiff's
rice was worth $4.68 per barrel.

4. Appeal and error ⊕173(9)—Plea that
plaintiff was estopped from repudiating set-
tlement of loss under fire policy held unavail-
able.

Plea that plaintiff was estopped from re-
pudiating settlement of loss under fire policy
*held* unavailable, where no such plea was made
in court below, and matter was raised for first
time in brief of counsel in Supreme Court.

5. Insurance ⊕579—Plaintiff held not estop-
ped from repudiating settlement of loss un-
der fire policy.

Plaintiff *held* not estopped to repudiate set-
tlement of loss under fire policy by accepting
balance remaining after discharge of debt due
another, where insurer was aware of plaintiff's
protest against action of creditor before it
made the settlement, and insurer admitted in
its answer that plaintiff's rights were not af-
fected by the settlement.

Appeal from Fifteenth Judicial District
Court, Parish of Allen; Jerry Cline, Judge.

Action by S. N. Young against the Fire-
man's Fund Insurance Company. Before tri-
al in the district court, Young transferred
all his interest in the suit to Artie W. Mc-
Michael. Judgment for defendant, and plain-
tiff appeals. Reversed and rendered.

S. N. Young, of Lake Charles, for appel-
lant.

Williams & Reed, of Oakdale, and McCoy
& Moss, of Lake Charles, for appellee.

THOMPSON, J. The defendant executed,
on October 2, 1920, in plaintiff's favor, a pol-
icy of insurance against loss by fire on 1,-
150 sacks of rice then located in the ware-
house of Miss Dora Moore in Oberlin, parish
of Allen.

The policy was for $10,350; the rice being
valued at $8.10 per sack.

On December 1, 1920, the rice was de-
stroyed by fire, resulting in a total loss to
the plaintiff.

A portion of the rice was subject to a
crop lien and privilege in favor of the Oak-
dale Bank & Trust Company, and a loss pay-
able clause in favor of the bank was at-
tached to the policy.

The bank, acting on its own responsibility,
adjusted the loss with the defendant at the
sum of $4,000, which was paid to the bank,
and the policy was surrendered to the de-
fendant.

This suit is to recover from the defendant
the difference between the value of the rice
at the time it was destroyed and the amount
paid to the bank for account of plaintiff.

The balance alleged to be due, and for
which plaintiff asks for judgment, is $2,-
566.35.

The defendant in its answer admits that
the settlement with the bank was made with-
out the consent of the plaintiff, and further

admits that the said settlement with the bank was not binding on the plaintiff.

It is alleged, however, that the amount paid the bank was at least 50 per cent. more than the value of the rice at the date of the loss, and that the said settlement was to the plaintiff's advantage.

After a trial there was judgment rejecting the plaintiff's demand, and he has appealed.

[1] It will be observed from the foregoing statement of the facts, as shown by the pleadings and evidence, that the single question presented for our consideration is the value of the rice covered by the insurance contract, and it is conceded that this value must be determined as of the date of the loss.

It will be remembered that the value placed on the rice by the contracting parties, as a basis for the insurance and the maximum measure of defendant's liability in case of loss, was $8.10 per sack.

The contract was made just a few days less than two months before the fire.

So that, if defendant's contention is correct, and the amount paid by defendant in its settlement with the bank was more than the value of the rice at the time it was burned, then rice had declined in value from $8.10 to $2.47 per sack during the two months the policy was in force.

The rice was rough rice, and it is shown by the evidence that rough rice had no market value during the months of November and December, 1920.

The Southern Rice Growers' Association, composed of some 35,000 farmers, about November 1, 1920, entered into an agreement with all of the rice millers of three of the southern states, including Louisiana, under the terms of which the association agreed not to sell its rice in the rough state, and the millers agreed to mill all rough rice for account of the growers for a consideration of $1 per barrel of 162 pounds, with an additional charge of 5 cents to be used in advertising the rice. It was also agreed that a committee of three should be selected to value all clean rice on a basis of 6 and 6½ cents for the choice grades—the downward grades being valued accordingly.

As a result of this agreement very little of the rice was sold in its rough state; it had no fixed market price. It is said by some of the witnesses that not more than 15 per cent. of the crop of that year had been sold up to December 1, 1920.

It is because of the fact that rough rice as such was out of commerce so to speak, and had no market price at the time of the loss, that the contention is made that the amount paid in the settlement was more than the burned rice was actually worth.

[2] But it is shown by the evidence that milled or clean rice did have a market value, and at the time the plaintiff's rice was destroyed Blue Rose rough rice, on the basis of the price of cleaned rice, was worth $5 per barrel.

In these circumstances it was proper and permissible to take the prices of clean rice as the basis for fixing the value of the plaintiff's rice in its rough state at the time of the fire.

If the plaintiff had milled his rice during the time the policy was in force (the policy covered both rough and clean rice), the Blue Rose rough rice would have had a value, and would have been worth to the plaintiff, after all charges were deducted, $5 per barrel f. o. b. shipping point.

This value, we think, is established by a decided preponderance of the evidence.

Mr. H. G. Chalkley, who was a director of the Southern Rice Growers' Association and the president and manager of that Association at the time this case was tried, and who had been engaged extensively in the rice growing and the handling and marketing of

rice since 1896, was asked the following question:

"From your information, what would you class as an average per sack on the rice in this controversy, this 1,150 sacks of rice, or an average, what would you place its value at Oberlin, Louisiana, on December 1st?"

To which the witness answered:

"Taking the value of Blue Rose rice at $5 per barrel, I value the 227 bags of Early Prolific at $4.75; 14 Honduras at $5.50, 362 Early Prolific, one and two's, at $4.75; 547 Japan one to four's at $3.75. That is the value per barrel. In order to get the value per sack you would have to add the differences between 162 pounds and 185 pounds. That is the value per barrel of 162 pounds of each variety."

The 1,150 sacks of rice aggregated 212,750 pounds, or 1,313 barrels of 162 pounds each.

[3] The average price per barrel on the plaintiff's rice is fixed by Mr. Chalkley at $4.68. This would make, for the 1,313 barrels, a total of $6,144.84.

Crediting this amount with the $4,000 paid to the bank would leave the defendant owing the plaintiff the sum of $2,144.84.

It is needless to say that the testimony of Chalkley is amply supported and corroborated by the testimony of other witnesses.

As a matter of fact, the testimony of the defendant's witnesses does not materially conflict with that of the plaintiff's witnesses.

The testimony of practically all of the defendant's witnesses has reference to isolated sales of rough rice before and after the fire, and from these sales the witnesses undertake to fix an average price of rough rice, for the crop of 1920, less than the price which formed the basis of the settlement with the bank.

As we have already seen, the measure of defendant's liability is the value of the rice at the time of the fire. It would therefore be obviously unjust and inequitable, and contrary to the legal principle governing the insurance contract, to accept as a basis for fixing the price of plaintiff's rice isolated sales or the general average of prices covering a period of several months after the loss.

If the insurance company could have replaced the rice at the valuation it now contends for, it would have offered to do so it seems to us. But no such offer was made.

[4] It is contended that the plaintiff ratified the adjustment with the bank by accepting the balance of the $4,000 after discharging the debt due the bank, and that he is now estopped from disregarding and repudiating the said settlement.

A ready answer to the contention is that no such plea of estoppel was made in the court below, and the matter is raised for the first time in brief of counsel in this court.

[5] Moreover, the plaintiff protested against the action of the bank, which fact was well known to the defendant before it made the settlement, and, further, the defendant judicially admitted in its answer that the plaintiff's rights were not affected by the settlement.

It appears that before the case was tried in the lower court Young transferred all of his interest in the suit to Artie W. McMichael, who is now the real plaintiff and appellant before this court.

It is therefore ordered and decreed that the judgment appealed from be set aside, and that plaintiff, Artie W. McMichael, as assignee of plaintiff, Young, have judgment against the defendant, the Fireman's Fund Insurance Company of San Francisco, Cal., for the sum of $2,144.84 with 5 per cent. per annum interest from judicial demand, to wit, May 24, 1921, till paid, and that defendant pay costs of both courts.

PER CURIAM. Rehearing denied.

OVERTON and ST. PAUL, JJ., dissent.